**Mikhail FRIDMAN Plaintiff,**

**v.**

**THE CITY OF NEW YORK, HS Systems, Inc., Marva Livingston Hammons and Aurelio Salon, Jr., M.D., Defendants.**

**No. 97 CIV. 6099(VM).**

United States District Court,
S.D. New York.

April 5, 2002.

David S. Preminger, Rosen, Preminger, Rosen, Preminger & Bloom, Lawrence Allen Goldberg, Gordon, Goldberg & Juengst, P.C., New York City, for Plaintiff.

Heidi Grossman, Paul A. Crotty, John F. Wirenius, Michael D. Hess, Corporation Counsel of the City of NY, New York City, Christopher Delamere Clarke, Leahey & Johnson, David Andrew Crichlow, Pillsbury Winthrop LLP, Michael Conforti, Leahey & Johnson, P.C., New York City, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Mikhail Fridman ("Fridman"), represented by the law firm of Rosen, Preminger & Bloom (the "Attorneys"), brought this action against defendants the City of New York, HS Systems, Inc., New York City Commissioner of Social Services Marva Livingston Hammons and Dr. Aurelio Salon Jr. (collectively "Defendants"). Defendants brought motions for summary judgment against all of Fridman's claims. Fridman retained the Attorneys under a contingency fee agreement dated July 22, 1997 (the "Retainer"), which was submitted as an attachment to Fridman's letter to the Court dated March 26, 2002. According to the Retainer, "expenses and disbursements for expert testimony and investigative or other services" are to be deducted from the net sum recovery, if any. A reasonable inference

would be that the Attorneys agreed to advance Fridman the expenses of litigation. However, the Retainer does not specify how such expenses are paid if Fridman makes no recovery.

By a Decision and Order dated January 30, 2002 ("Decision"), the Court granted Defendants' motion for summary judgment and dismissed the case. On March 1, 2002, Fridman filed a Notice of Appeal from the Decision. On March 8, 2002, Fridman informed the Court of his intention to file a motion for leave to appeal in forma pauperis pursuant to 28 U.S.C. § 1915 and Rule 24(c) of the Federal Rules of Appellate Procedure and requested leave to file without the pre-motion conference required by the Court's Individual Practices. The Court granted Fridman's request to file a motion without a pre-motion conference.

The appeals process can be costly. In addition to paying certain filing fees, an appellant must provide the appellate court with copies of the official record. *See* Fed. R.App. Proc. 10 and 11. Although his appeal filing fees have been paid, Fridman filed the instant motion in order to avoid incurring the expense of copying the voluminous official record created at the district court level. Fridman stated that he cannot afford to pay the cost of reproducing, binding and filing numerous copies of the Record. Fridman stated that his household's gross monthly income varies between $2,700 and $3,000 and expenses, including entertainment, amount to $2,300 on average. In addition, Fridman and his wife together have $1,600 in their bank accounts.

■ Leave to proceed in forma pauperis may be granted "in any suit, action

or proceeding, civil or criminal, or appeal therein" to a litigant who "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1).[1] If granted, the Court may direct the United States to pay the costs of "printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court." 28 U.S.C. § 1915(c). Section 1915 does not authorize the waiver of witness fees. *See Brown v. DeFilippis,* 125 F.R.D. 83, 85 (S.D.N.Y.1989). Nor, of course, does § 1915 empower a court to compel the federal government to pay an attorney's fee. *See Sears, Roebuck and Co. v. Sears,* 686 F.Supp. 385, 386 (N.D.N.Y.1988), *aff'd* 865 F.2d 22 (2d Cir. 1988).

Rule 24 provides that: "[A] party to a district-court action who desires to appeal in forma pauperis must file a motion in the district court" and attach an affidavit showing in detail the party's inability to pay. If the motion is granted, the party proceeding in forma pauperis may request that the appeal be heard on the original record without reproducing any part of it. *See* Fed. R.App. Proc. 24(c).

■ The decision of whether to grant a request to proceed in forma pauperis is left to the District Court's discretion under § 1915. *See Williams v. Estelle,* 681 F.2d 946, 947 (5th Cir.1982); *Potnick v. Eastern State Hospital,* 701 F.2d 243 (2d Cir.1983); *Schwartz v. U.S. Postal Service,* 1994 U.S.App. LEXIS 25941, *2 (10th Cir. Sept. 19, 1994). The Court's discretion is limited in that: "An appeal may not be taken in forma pauperis if the trial court certifies in

---

**1.** Although section 1915(a) refers to a "statement of all assets such prisoner possesses," this section has been applied by courts in their review of applications of non-prisoners as well. *See, e.g., Clay v. New York Nat'l*

*Bank,* No. 99 Civ. 9857, 2001 WL 277299, at *1 (S.D.N.Y. Mar. 21, 2001); *Linden v. Harper & Row Publishers,* 490 F.Supp. 297, 300 (S.D.N.Y.1980).

writing that it is not taken in good faith." [2] 28 U.S.C. § 1915(a)(3). Furthermore, the Supreme Court explained that:

> The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution.

*Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339–40, 69 S.Ct. 85, 93 L.Ed. 43 (1948); *see also Potnick,* 701 F.2d at 244.

■ In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or "can get" from those who ordinarily provide the applicant with the "necessities of life," such as "from a spouse, parent, adult sibling or other next friend." *Williams v. Spencer,* 455 F.Supp. 205, 208–09 (D.Md.1978) (citing *Adkins,* 335 U.S. at 339–40, 69 S.Ct. 85). If it appears that an applicant's "access to [ ] court has not been blocked by his financial condition; rather [that] he is 'merely in the position of having to weigh the financial constraints posed if he pursues [his position] against the merits of his case,'" then a court prop-

erly exercises its discretion to deny the application. *Sears Roebuck,* 686 F.Supp. at 385.

■ During the proceedings before this Court, Fridman created the voluminous record by attaching, *inter alia,* entire deposition transcripts of Fridman's experts, Dr. Alexander Elder and Dr. George Brief, as well as inadmissible evidence, such as the entire transcript of a New York City Council hearing, as exhibits. Fridman's deposed experts testified that they charged $300 and $200 per hour for their work on his case. During discovery, which lasted for approximately five years, Fridman retained other experts. Of course, also, the usual costs of litigation necessarily accumulated during this time. The Court has been provided with no information as to the initial allocation of these costs or, in particular, whether Fridman has already absorbed them.

Now Fridman states that he is responsible for the "costs and disbursements of the action" and that he "cannot afford to pay" the $10,000 to $15,000 estimated cost of "reproducing, binding and filing numerous copies of the Record." (Mikhail Fridman Affidavit in Support of Motion for Leave to Appeal In Forma Pauperis, dated March 7, 2002, ¶ 2.) Against the background of Fridman's contributions to the creation of an

---

**2.** To determine whether the appeal is taken in good faith, a court must consider the objective merits of the appeal. *See Linden v. Harper & Row Publishers,* 490 F.Supp. 297, 300 (S.D.N.Y.1980) ("In civil as well as criminal cases most appellants will subjectively pursue their appeals in good faith, whatever their merits.") (extending the objective standard set forth in *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) to the civil context); *see also Weber v. Multimedia Entertainment Inc.,* No. 97 Civ. 0682, 2001 WL 669001, *1 (S.D.N.Y. June 14, 2001) (citing *Clay,* 2001 WL 277299, at *1

and *Martinez v. Scully,* No. 91 Civ. 5774, 1994 WL 132317, at *1 (S.D.N.Y. Apr. 13, 1994)) (applying objective standard to determination of good faith). Defendants have raised the issue of good faith in the sense that the action was dismissed pursuant to Fed.R.Civ.P. 56. However, in light of the Court's discussion of the merits of the in forma pauperis application itself, *see infra* at p. 537, the Court need not address the good faith issue. If it were to address this issue, the Court would likely conclude that Fridman's appeal will contain a non-frivolous argument on the law or facts, that the objective minimum is met and the appeal is therefore taken in good faith.

immense record before the Court, this assertion is somewhat surprising.

Defendants largely base their objection to Fridman's application on the ground that leave to proceed in forma pauperis is intended to assist indigent litigants, and not their attorneys. In fact, in most cases applicants for in forma pauperis status are *pro se* parties, many of them prisoners, and typically they have not had private retained counsel litigate their cases to some disposition. Here, Fridman does not indicate that he is pursuing his appeal *pro se;* he remains represented on appeal by the same Attorneys who prosecuted this matter at the District Court for several years. The absence of any affidavit, by Fridman or his Attorneys, made in response to Defendants' opposition and explaining their costs arrangement—that is, who paid the filing fees, who is responsible for other legal expenses that conceivably may run as much as the cost of reproducing the record and why it has become necessary at this stage for Fridman to proceed in forma pauperis—raises some doubt as to the merits of Fridman's application and who may be its beneficiary. In other words, on the record before the Court, it appears that Fridman's application is being advanced as much or more to cushion the Attorneys from assuming additional financial risk as to save Fridman from impoverishment should he proceed with his appeal.

The Court also must assess Fridman's financial status. Fridman's wife is gainfully employed and Fridman's social security disability payments supplement her income. Thus, this situation is different from that faced in *Potnick*, where the *pro se* litigant subsisted on an income level below the poverty level, had substantial debt, and no means to pay the filing fee required to a complaint. 701 F.2d at 244. Here, Fridman's household income exceeds expenses and Fridman has already presented his case to this Court. At this point, Fridman is not faced with the stark decision between a potentially meritorious claim and foregoing the necessities of life. Although he may not feel affluent and may be leery of taking any additional financial risk in pursuit of his claim, Fridman has not demonstrated the degree of financial stringency necessary to justify relief. *See Sears*, 865 F.2d at 23; *see also Handley v. Union Carbide Corp.*, 622 F.Supp. 1065 (S.D.W.V.1985) (denying application for leave to appeal in forma pauperis made by unemployed husband and wife, homeowners, whose monthly expenses exceeded their income from disability payments).

It is not apparent on the record how the public will be served by placing upon it, and thereby alleviating Fridman of, the costs associated with copying the record for Fridman's appeal. Accordingly, the Court denies Fridman's application to appeal in forma pauperis.

■ Defendants also request that the Court dismiss Fridman's request for failure to "state a claim on which relief may be granted" as is authorized under 28 U.S.C. § 1915(e)(2)(B)(ii). *See Cieszkowska v. Grayline New York*, No. 10 Civ. 0128, 2001 WL 1131990, *2 (S.D.N.Y. Sept. 24, 2001). The standard for dismissal of an action or appeal taken in forma pauperis is identical to the standard for dismissal on a motion made pursuant to Fed. R.Civ.P. 12(b)(6). *See id.* Defendants argue that, because the Court granted summary judgment against Fridman, Fridman failed to state a claim for the relief he now seeks. However, the standard of review under Rule 12(b)(6) does not look to the facts of the case, but considers only the pleadings. *See Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). By contrast, here, the Court granted the motion for summary judgment based on the voluminous facts

and record that was developed over the course of the lengthy discovery period and submitted to the Court. *See Fridman v. City of New York*, 183 F.Supp.2d 642 (S.D.N.Y.2002). Thus, the Court's denial of Fridman's instant application does not rest on that ground.

### CONCLUSION

Accordingly, it is hereby

**ORDERED** that Fridman's application for leave to proceed in forma pauperis is denied.

**SO ORDERED**.